**LIANYUNGANG FIRSTDART TACKLE CO., LTD.,**
Plaintiff,

v.

**DSM DYNEEMA B.V., DSM Dyneema, LLC, Defendants.**

No. 4:12–CV–27–BO.

United States District Court,
E.D. North Carolina,
Eastern Division.

June 28, 2012.

Ian L. Saffer, Kenneth S. Chang, Kilpatrick Townsend & Stockton LLP, Denver, CO, Susan H. Boyles, Daniel R. Taylor, Jr., Kilpatrick Townsend & Stockton LLP, Winston–Salem, NC, for Plaintiff.

Ernest Bradley Evans, Ward & Smith, P.A., Greenville, NC, for Defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the Court on Defendant DSM Dyneema L.L.C. ("LLC")'s Motion to Dismiss for Failure to State a Claim [DE 43] and Defendant DSM Dyneema B.V. ("B.V.")'s Motion to Dismiss [DE 45]. For the following reasons, the Motions are GRANTED. Plaintiff's Motions for Preliminary Injunction [DE 5, 37] are DENIED AS MOOT. Defendant LLC's Motion for Judgment on the Pleadings [DE 24] is DENIED AS MOOT. Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [DE 62] is DENIED. Defendants' Motion to Stay Responsive Briefing [DE 68] is DENIED AS MOOT.

## BACKGROUND

Plaintiff Lianyungang FirstDart Tackle Co., Ltd. ("First Dart") filed this action on February 22, 2012, later filing an amended complaint on April 9, 2012 [DE 26]. In its amended complaint, First Dart, a manufacturer and seller of fishing tackle, asserts that DSM Dyneema, a manufacturer and seller of fiber, issued a press release on November 8, 2011. FirstDart claims that the press release falsely accused it of having been subject to a seizure at the 2011 Langfang Fishing Show by Chinese governmental authorities. The press release alleged that products and other materials that infringed the Dyneema trademark were seized. On December 14, 2011, these allegedly false statements were republished in the trade magazine, *Tackle Trade World.* As a result of these publications, FirstDart claims that it has been contacted by its customers, including one who stated that it would "return FirstDart products as a result of the False Statements."

FirstDart claims that it has sent letters to DSM Dyneema requesting removal of the press release from all trade journals and publications, a retraction, and removal of the press release from DSM Dyneema's websites. After unsuccessful attempts to reach a resolution in this matter, FirstDart filed this lawsuit, alleging federal false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), unfair and deceptive trade practices, common law unfair competition, common law defamation, and libel *per se* against two DSM Dyneema companies: DSM Dyneema, LLC in Greenville, North Carolina, and DSM Dyneema B.V. in the Netherlands. DSM Dyneema LLC claims that DSM Dyneema B.V. alone is responsible for the press release. DSM Dyneema B.V. asserts that it is not subject to personal jurisdiction in this court.

## DISCUSSION

### Standard of Review

When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim to relief that is facially plausible. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1973.

### I. DSM Dyneema LLC's Motion to Dismiss

DSM Dyneema LLC asserts that it "did not issue the Press Release, did not make

any statements, and did not engage in any tortious conduct." FirstDart does not contest the LLC's assertion, but responds that the press release was published by both Dyneema LLC and B.V. on "the single, unified website" that they jointly operate. FirstDart reaches this conclusion of joint liability through its allegation that the two defendants hold themselves out to customers, potential customers, and the public as a single entity. It claims that this ambiguous public persona demonstrates at least an apparent agency relationship between Dyneema LLC and Dyneema B.V., noting that the press Release, website, and 2011 Integrated Annual Report for the joint parent company of both defendants are attributed to "DSM Dyneema," without further specification.

 Under North Carolina law, a corporation is entitled to a presumption that it is an entity which is separate from its sister corporation. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir.1998). Absent special circumstances allowing piercing of the corporate veil, an affiliated corporation is not liable for the alleged statutory violations of its sister corporation. *Glenn v. Wagner*, 313 N.C. 450, 329 S.E.2d 326, 330–31 (1985)

 In its Motion to Dismiss, DSM Dyneema B.V. explains the corporate relationship among the defendants as follows: The LLC and the BV are separate legal entities organized and existing under the laws of Delaware and the Netherlands respectively. They have separate management teams which report to the leadership team of the Business Group. There is no overlap of directors or officers and the LLC and the BV have separate geographic sales and marketing areas. They have different product portfolios and production/manufacturing capabilities, and they financially report through separate corporate structures up to the consolidation point in the Business Group level. The LLC and the BV each perform their corporate formalities, such as corporate filings, officer and shareholder meetings, and tax reporting, within each company's forum country, or state as the case may be, but nonetheless separately from each other. They are, quite simply, separate companies. [DE 46 at 14] (internal citations omitted); *see also* [DE 46–1]. FirstDart has failed to counter DSM Dyneema B.V.'s explanation of the Dyneema corporate structure with any factual allegations that would indicate an agency relationship, such as "inadequate capitalization, non-compliance with corporate formalities, complete dominion and control so that it has not independent identity, and excessive fragmentation of a single enterprise into separate corporations." *Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp.2d 664, 687 (M.D.N.C.2011) (citing *Wagner*, 329 S.E.2d at 330–31). Because First Dart's amended complaint fails to state a plausible claim upon which relief can be granted against the LLC, the Court grants the LLC's motion to dismiss.

## II. DSM Dyneema B.V.'s Motion to Dismiss

 DSM Dyneema B.V. asserts that this Court lacks personal jurisdiction over it, as it is a Dutch citizen and does not maintain minimum contacts with North Carolina. When a challenge to personal jurisdiction is addressed only on motions, legal memoranda, and the allegations contained in the complaint, the plaintiff must make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). The court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence

of jurisdiction." *Id.* Once a defendant has provided specific denials contrary to a plaintiff's assertion of facts supporting jurisdiction, a plaintiff's "bare allegations that the defendants had had significant contacts with the [forum] state" are insufficient to establish jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396, 402–03 (4th Cir. 2003).

In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, (1) the forum state's long-arm statute must authorize the exercise of personal jurisdiction and (2) the defendant must have sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). Because North Carolina's long-arm statute "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause," these inquiries collapse into one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997).

Personal jurisdiction can either be specific or general. First, if the foreign party maintains "continuous and systematic" contacts with a state, the state has general personal jurisdiction over the party, and the nonresident may be sued in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952). When there are no such contacts, a court may assert personal jurisdiction if the litigation arises out of the defendant's contacts with the forum, which is known as specific jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

## A. Specific Jurisdiction

Specific jurisdiction exists if a plaintiff's claims arise out of a defendant's purposeful availment of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). FirstDart purports to assert that Dyneema B.V.'s publication of the Press Release on a website that was available to residents of North Carolina establishes such specific jurisdiction. However, in *ALS Scan*, the Fourth Circuit analyzed when "an out-of-state citizen, through electronic contacts, has conceptually 'entered' the State via the internet for jurisdictional purposes." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir.2002). In that case, the court held that a state may exercise judicial power over a person outside of the state when that person (1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions with the state, and (3) that activity creates in a person within the state, a potential cause of action cognizable in the state's courts. *Id.* at 714. The court of appeals has specifically held that personal jurisdiction does not exist over a defendant who has posted information to a generally-available website, absent a manifested intent to aim a website or posted articles at residents of the forum state. *Young v. New Haven Advocate*, 315 F.3d 256, 258–59 (4th Cir.2002). Because First-Dart has not alleged that this website was in any way directed at residents of North Carolina, this Court holds that specific personal jurisdiction is lacking in this case.

## B. General Jurisdiction

As noted above, no personal jurisdiction exists over DSM Dyneema B.V. unless the company has "continuous and systematic general business contacts" with

North Carolina and can establish general jurisdiction. *See Helicopteros Nacionales de Colombia,* 466 U.S. at 416, 104 S.Ct. 1868. "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Grp.,* 126 F.3d at 623–24.

### 1. Agency Relationship and Piercing the Corporate Veil

In an attempt to satisfy its burden to establish general jurisdiction, FirstDart first claims that DSM Dyneema B.V. is subject to personal jurisdiction in North Carolina through the acts of its apparent agent, DSM Dyneema, LLC. *See, e.g., Bauer v. Douglas Aquatics, Inc.,* 207 N.C.App. 65, 698 S.E.2d 757, 767 (2010). FirstDart claims that DSM Dyneema B.V. and DSM Dyneema, LLC hold themselves out to the public as a singular business entity through a common website, a common 2011 Integrated Annual Report, and a lawsuit filed on behalf of "DSM Dyneema," none of which reference the LLC or the B.V. individually, and as a result the LLC is an "apparent agent" of the B.V.

The doctrine of corporate separateness entitles the defendant to a presumption that the "contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 276–77 (4th Cir. 2005). Absent evidence presented by plaintiff, such as significant degree of control, that might rebut the presumption, the Court finds that Dyneema B.V. cannot be haled into court in the Eastern District of North Carolina on the sole basis of the LLC's continuous actions in the forum state.

Although FirstDart attributes great significance to the fact that both Defendants are "part of the same Business Group," corporate entities that are merely "related," such as sister corporations or parents of subsidiaries, are not automatically subject to personal jurisdiction in the forum state of the "related" entity. *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 156 (3d Cir. 2010); *Pan–American Prods. & Holdings, LLC,* 825 F.Supp.2d at 680–81 ("[t]he fact that all Defendants utilize the same advertising brochures ... is scant evidence of any Defendant actually soliciting business in North Carolina.").

The facts of this case are easily distinguishable from those in *PCS Phosphate Co. v. Norfolk S. Corp.,* 520 F.Supp.2d 705, 713 (E.D.N.C.2007), *aff'd,* 559 F.3d 212 (4th Cir.2009), on which FirstDart heavily relies. In that case, the defendant company maintained offices in Raleigh and Charlotte, a resident vice president worked in Raleigh, the company held meetings in the state, denoted Raleigh and Charlotte as points of correspondence in its letterhead, and planned and coordinated infrastructure and capital projects in North Carolina. *Id.* In addition, it made strategic infrastructure plans for its North Carolina subsidiary, and conducted meetings in North Carolina on the subsidiary's behalf. *Id.* at 712–13. Absent such targeted involvement in the affairs of the related company's North Carolina presence, FirstDart has failed to establish a basis for exercising personal jurisdiction over DSM Dyneema B.V.

To the extent that FirstDart relies on apparent agency principles, as enunciated in *Bauer v. Douglas Aquatics,* the facts of this case are distinguishable from the facts in *Bauer.* In that case, a website described the forum state franchisee as one of the locations of the franchisor and the North Carolina Court of Appeals held that personal jurisdiction existed over the franchisor because the website corroborated in-person representations made to the individual plaintiff, an individual who had contracted with the franchisee for con-

struction of a swimming pool on his property. *Bauer*, 698 S.E.2d at 761–62. Here, no representation is made on the DSM Dyneema website as to the relationship between the two corporate entities and FirstDart does not allege that DSM Dyneema B.V. or DSM Dyneema, LLC ever made any representations to it about either company's ability to bind the other. In addition, this case involves a corporate plaintiff and not an individual plaintiff, so the plaintiff is not entitled to rely to the same degree on "apparent" agency principles, as such reliance would not be "consistent with ordinary care and prudence" for a corporate plaintiff. *See id.* at 767.

### 2. Continuous and Systematic Contacts by DSM Dyneema B.V.

If this Court does not accept that an agency relationship exists between the two companies, which it does not, FirstDart asserts that continuous and systematic general business contacts are established by the fact that (1) Dyneema B.V. has filed a lawsuit in Virginia, (2) the company has shipped merchandise to South Carolina and Virginia, (3) products manufactured or sold by Dyneema B.V. are available for sale in North Carolina.

The Lanham Act does not authorize nationwide service of process. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F.Supp.2d 513, 554 (E.D.Va.2009) (citing *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001)). Therefore, any potential contacts by DSM Dyneema, B.V. with South Carolina or Virginia are irrelevant to this Court's analysis of whether a federal court in North Carolina has personal jurisdiction over these claims.

As to the availability of goods in North Carolina, the Supreme Court noted in *J. McIntyre Machinery, Ltd. v. Nicastro* that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 2852, 180 L.Ed.2d 796 (2011) (holding that a foreign subsidiary that is not registered to do business in North Carolina; has no place of business, employees, or bank accounts in North Carolina; does not design, manufacture, or advertise its products in North Carolina; and does not solicit business in North Carolina cannot be subject to personal jurisdiction in North Carolina, even if some of the company's products do enter North Carolina through the stream of commerce). Absent any indication that DSM Dyneema B.V. targeted North Carolina with its products, the mere availability for sale of those products is insufficient to support personal jurisdiction in the state.

### CONCLUSION

For the foregoing reasons, Defendant LLC's Motion to Dismiss for Failure to State a Claim [DE 43] and Defendant BV's Motion to Dismiss [DE 45] are GRANTED. Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [DE 62] is DENIED. The remaining pending motions [DE 5, 24, 37, 68] are DENIED AS MOOT.